**BDO USA, P.C. v Franz**

2025 NY Slip Op 30053(U)

January 7, 2025

Supreme Court, New York County

Docket Number: Index No. 652816/2020

Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

-------------------------------------------------------------------------------X

BDO USA. P. C. F/K/A BDO USA, LLP,

                          Plaintiff,

                  - v -

MATTHEW FRANZ and DONALD SOWELL,

                      Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 652816/2020 |
| **MOTION DATE** | -- |
| **MOTION SEQ. NO.** | 014 015 |

**DECISION + ORDER ON MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 014) 284, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 382, 383, 384, 389, 390, 391, 392, 450, 451, 452, 453, 454, 455, 456, 457, 458, 459, 462, 463, 470, 471, 472, 473, 474, 475, 476, 477, 479

were read on this motion to/for                JUDGMENT - SUMMARY         .

The following e-filed documents, listed by NYSCEF document number (Motion 015) 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 379, 380, 381, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 420, 460, 461, 478

were read on this motion to/for                JUDGMENT - SUMMARY         .

In motion sequence number sequence 014, plaintiff BDO USA, P.C. f/k/a BDO USA LLP (BDO) moves pursuant to CPLR 3212 (b) and (e) for partial summary judgment on its cause of action for breach of contract and, alternatively, full summary judgment on its faithless servant claim.  Regarding its breach of contract claim, BDO only moves for summary judgment on liability for defendants' alleged violation of the exclusivity provision of the manager agreements at issue and not other alleged breaches.  In motion sequence number 015, defendants Matthew Franz and Donald Sowell move pursuant to CPLR 3212 for summary judgment dismissing the complaint.

**652816/2020   BDO USA, LLP vs. FRANZ, MATTHEW**
**Motion No.  014 015**

**Page 1 of 28**

[* 1]

## Background

Sowell worked for BDO pursuant to a September 8, 2015 manager agreement until June 30, 2020. (NYSCEF Doc. No. [NYSCEF] 383, Joint Statement of Undisputed Material Facts [JS] ¶¶ 3, 12; NYSCEF 4, Sowell Manager Agreement.) Franz worked for BDO pursuant to a November 6, 2015 manager agreement until June 26, 2020. (NYSCEF 383, JS ¶¶ 4, 14; NYSCEF 3, Franz Manager Agreement.)[1]

The manager agreements' exclusivity provision states that "[w]hile employment continues, Employee agrees to devote all of Employee's working time and energy and to give Employee's best attention exclusively to the business of the Firm." (NYSCEF 3, Franz Manager Agreement ¶ 2; NYSCEF 4, Sowell Manager Agreement ¶ 2.) Additionally, per their manager agreements, defendants agreed to be bound by the BDO Code of Business Ethics and Conduct (Ethics Code) and Workplace Guide. (*Id.* ¶ 3.) The manager agreements also include the following liquidated damages provision:

> "In consideration of the Firm appointing Employee to a Manager position and/or for continued employment with the Firm in a Manager position, it is agreed that prior to, at, or after, his/her departure from the Firm (whether by resignation, termination or otherwise):
>
> (a) If Employee, without the specific consent of the Chief Executive Officer, or his/her designee, removes, copies, uses or discloses any Confidential Information, including any files, business records, trade secrets or other property of the Firm, in contravention of the Employee's obligations under this Agreement, then Employee will pay the Firm $20,000 for any such incident, loss or damage, or a lesser amount, if Employee reasonably proves to the Firm that such lesser amount fully compensates the Firm for the applicable loss or damage;
>
> (b) If Employee, without the specific consent of the Chief Executive Officer, or his/her designee, otherwise causes the Firm financial loss or damage through unfair competition or business practices or violation of Employee's fiduciary duty, including the unauthorized use of Confidential Information, then the Employee

---

[1] BDO's counsel concedes that the two manager agreements are identical. (NYSCEF 486, tr at 4:9 [oral argument on mot. seq. nos. 014, 015].)

**652816/2020   BDO USA, LLP vs. FRANZ, MATTHEW**
**Motion No.  014 015**

**Page 2 of 28**

2 of 28

shall pay the Firm $20,000 for any such incident, loss or damage, or a lesser amount, if Employee reasonably proves to the Firm that such amount reflects the applicable loss or damage." (*Id.* ¶ 8.)

BDO alleges that defendants breached the exclusivity provision by engaging in outside business while employed by BDO, as well as other provisions concerning the confidentiality of BDO's information. BDO alleges causes of action against defendants for (i) breach of the manager agreements, (ii) breach of fiduciary duty, (iii) breach of the duty of good faith and fair dealing, (iv) faithless servant, and (v) unjust enrichment.

**Discussion**

Under CPLR 3212, "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact." (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986] [citations omitted].) Once the movant has made such a showing, the burden shifts to the opposing party to demonstrate, with admissible evidence, facts sufficient to require a trial, or summary judgment will be granted. (*See Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985].) "[S]ummary judgment may be granted as to one or more causes of action, or part thereof, in favor of any one or more parties, to the extent warranted, on such terms as may be just." (CPLR 3212 [e].)

Motion Seq. No. 014 – BDO's Motion for Partial Summary Judgment

*Breach of Contract*

BDO moves for partial summary judgment on the issue of liability only the extent BDO alleges that defendants breached the exclusivity provision of the manager agreements by "failing to devote all of their working time and energy and to give their

652816/2020 BDO USA, LLP vs. FRANZ, MATTHEW
Motion No. 014 015

Page 3 of 28

3 of 28

[* 3]

best attention exclusively to the business of the Firm, including by (a) maintaining separate personal consulting businesses that competed with BDO and (b) devoting time and energy and attention to those separate businesses while employed at BDO." (NYSCEF 2, Complaint ¶ 75.)

The elements of a cause of action for breach of contract are "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." (*Harris v Seward Park Hous. Corp.*, 79 AD3d 425, 426 [1st Dept 2010] [citation omitted].)

Defendants were parties to their respective manager agreements with BDO (NYSCEF 383, JS ¶¶ 3-4; NYSCEF 3, Franz Manager Agreement; NYSCEF 4, Sowell Manager Agreement) and BDO's performance thereunder is undisputed. (*See* NYSCEF 383, JS ¶¶ 10, 13 [stating BDO paid wages to defendants]; NYSCEF 300, Sowell earning statements; NYSCEF 296, Franz earning statements.) Therefore, the remaining issues are whether defendants breached and whether damages resulted.

1. Sowell

Defendants do not dispute BDO's interpretation of the exclusivity provision as prohibiting outside employment. Thus, such interpretation is conceded. Sowell admits that during his employment with BDO, he also provided services through nonparty DS Technical Consulting (DS Technical), which he owned. (NYSCEF 289, tr at 152:8-10 [Sowell depo]; NYSCEF 486, tr at 7:9-12 [oral argument on mot. seq. nos. 014, 015] [conceding that Sowell provided services through DS Technical]; NYSCEF 346, emails and proposal at 19/21 [stating that Sowell is "Owner, DS Technical Consulting"].) Sowell testified that he also performed services for nonparty Berkley Research Group

(BRG) beginning in 2018.[2] (NYSCEF 289, tr at 159:25-160:3 [Sowell depo]; NYSCEF 486, tr at 19:10-13 [oral argument on mot. seq. nos. 014, 015] [conceding that Sowell performed services for BRG].) Thus, there is no dispute that, while an employee of BDO, Sowell performed outside work. Defendants, however, argue that BDO waived its right to enforce the manager agreement's "in writing" requirement and exclusivity provision.

Pursuant to paragraph 14, the manager agreement cannot be "amended or waived by either party unless such amendment or waiver is made in writing." (NYSCEF 3, Franz Manager Agreement ¶ 14.)[3] There is no evidence of such a writing. Nevertheless, "a contracting party may orally waive enforcement of a contract term notwithstanding a provision to the contrary in the agreement." (*Bank Leumi Trust Co. v Block 3102 Corp.*, 180 AD2d 588, 590 [1st Dept 1992] [citations omitted], *lv denied* 80 NY2d 754 [1992].)

> "Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned …. Such abandonment may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage …. However, waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection. Generally, the existence of an intent to forgo such a right is a question of fact." (*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d 96, 104 [2006] [internal quotation marks and citations omitted].)

"Waiver may be demonstrated by words or conduct, including full or partial performance and equitable estoppel." (*Taylor v Blaylock & Partners, L.P.*, 240 AD2d 289, 290 [1st

---

[2] As of December 7, 2022, Sowell was still working for BRG. (NYSCEF 289, tr at 161:12-13 [Sowell depo].)

[3] The court quotes paragraph 14 of Franz's manager agreement because the copy of Sowell's manager agreement (NYSCEF 4) includes only a part of paragraph 14. Nevertheless, the two manager agreements are identical. (*See supra* at 2 n 1.)

**652816/2020 BDO USA, LLP vs. FRANZ, MATTHEW**
**Motion No. 014 015**

**Page 5 of 28**

[* 5]

Dept 1997] [citation omitted].) "[A] waiver is not created by negligence, oversight, or thoughtlessness, and cannot be inferred from mere silence." (*Stassa* v *Stassa*, 123 AD3d 804, 806 [2d Dept 2014] [internal quotation marks and citations omitted], *lv dismissed* 8 NYS3d 256 [2015].) The concept of waiver is rooted "in equity, and [is] designed to prevent the waiving party from lulling the other party into a belief that strict compliance with a contractual duty will not be required and then either suing for noncompliance or demanding compliance for the purpose of avoiding the transaction." (*Kamco Supply Corp. v On the Right Track, LLC*, 149 AD3d 275, 281 [2d Dept 2017] [internal quotation marks and citation omitted], *lv dismissed* 30 NY3d 1036.)

Defendants raise an issue of fact as to whether BDO waived its rights under the manager agreement as to Sowell. First, Sowell testified that, when he was hired by BDO in 2015, he disclosed his "current endeavors," DS Tech, to Eric Jia-Sobota, a BDO partner, and BDO's human resources department. (NYSCEF 288, tr at 69:9-13 [Sowell depo] ["I did speak with HR when I disclosed my current -- current endeavors, so DS Tech. And that was all disclosed to Eric [Jia-Sobota] at the time, to HR and to the background check when the background check was done"].) Jia-Sobota's testimony corroborates Sowell. (NYSCEF 343, tr at 13:8-10, 162:10-15, 162:21-163:2 [Jia-Sobota[4] depo] ["I was aware that Mr. Sowell and Mr. Franz had outside activities"… "Yes, (Sowell) did receive approval"]; *see Reynolds v Snow*, 10 AD2d 101, 109 [1st Dept 1960] ["Generally, an agent's knowledge … is imputed to his principal" (citations

---

[4] The court rejects BDO's procedurally improper attack on Jia-Sobota's credibility. (*See Cresco Labs NY, LLC v Fiorello Pharms., Inc.*, 217 AD3d 539, 541 [1st Dept 2023] ["It is not the function of a court deciding a summary judgment motion to make credibility determinations" (internal quotation marks and citation omitted)].)

**652816/2020  BDO USA, LLP vs. FRANZ, MATTHEW**
**Motion No.  014 015**

**Page 6 of 28**

[* 6]

omitted)], *affd* 8 NY2d 899 [1960].)  Second, Sowell testified that Jia-Sobota represented that, although "he did not have authority to change the language" of the manager agreement, "the language [prohibiting outside employment] would not necessarily be [acted] upon."  (*See* NYSCEF 288, tr at 76:13-16 [Sowell depo].)[5] Finally, BDO's client proposal dated February 28, 2019, which includes Sowell's biography, states that Sowell is "Owner, DS Technical Consulting."  (NYSCEF 346, emails and proposal at 19/21.)

Taken together, BDO's alleged prolonged failure to act on the alleged breach of the exclusivity provision, Jia-Sabota's representation that provision would not be acted upon, and BDO's use of Sowell's ownership of DS Technical in its marketing material raise an issue of fact as to whether BDO waived its rights.  Accordingly, as to Sowell, the motion for partial summary judgment on liability on a portion of the breach of contract cause of action is denied. (*See Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957] ["drastic remedy [of summary judgment] should not be granted where there is any doubt as to the existence of such issues [of fact] … or where the issue is 'arguable'" (citations omitted)].)

2.  Franz

To establish Franz's breach, BDO relies solely on Franz's deposition testimony that he continued working for BRG for six to twelve months while already employed by BDO.  (NYSCEF 294, tr at 153:5-15 [Franz depo].)[6]  Defendants, however, cite to later

---

[5] Defendants argue that Jia-Sobota acted within the scope of his authority when he made the representation at issue.  On reply, BDO does not address this argument.
[6] BDO also alleges that Franz breached the exclusivity provision by working for Integrated Compliance Analytics, Inc. (ICA), Franz's "single-employee business." (NYSCEF 321, 10/26/15 Outside Employment Approval Request Form.)  BDO is not

portions of the deposition transcript where Franz testified that he "didn't continue to do work for BRG" (*id.* at 188:9-10) and does not "recall specifically when [he] did the work." (*Id.* at 188:21-22; *see also id.* at 251:23-25 ["As I stated earlier, I don't recall specifically when I completed the work for BRG"].) The inconsistencies in Franz's testimony raise an issue of fact as to whether he worked for BRG after he began his employment with BDO. (*See Schachat v Bell Atl. Corp.*, 282 AD2d 329, 330 [1st Dept 2001] ["Relying solely on plaintiff's [inconsistent] testimony, defendant failed to meet its burden of eliminating any material issues of fact" (citation omitted)].)[7] Accordingly, as to Franz, the motion for partial summary judgment on liability on a portion of the breach of contract cause of action is denied.

### 3. Injury

In their opposition to BDO's motion, defendants assert that BDO fails to address what injury it suffered and what damages it incurred as a result of the alleged breach of the exclusivity provision. In the complaint, BDO alleges that defendants conducted other personal business in competition with BDO throughout their employment. (NYSCEF 2, Complaint ¶ 5.) However, BDO does not expound on this allegation or

---

moving for summary judgment with respect to that alleged breach; BDO admits that there is an issue of fact as to whether Franz received BDO's permission for ICA-related work. (NYSCEF 382, Moving Brief at n 9.)

[7] Defendants argue that the allegations about BRG are not pleaded in the complaint. BDO alleges that "Franz … maintained separate competing consulting businesses outside of BDO, [ICA] …. through which [he] conducted personal business in competition with BDO while employed at BDO" (NYSCEF 2, Complaint ¶ 5) and that Franz "breached the Manager Agreements by failing to devote all of [his] working time and energy and to give their best attention exclusively to the business of the Firm, including by (a) maintaining separate personal consulting business[ ] that competed with BDO and (b) devoting time and energy and attention to [that] separate business[ ] while employed at BDO." (*Id.* ¶ 75.) Although BRG is not specifically mentioned in the complaint, the court interprets the complaint as encompassing Franz's BRG work.

even address it on its motion. Rather, BDO, on reply, asserts that it need not prove actual damages as they are not an element of a breach of contract claim. Nevertheless, BDO further asserts that nominal damages are always available for breach of contract, and thus, it satisfied the fourth element of its claim.

There is a difference between injury and damages and to establish liability for breach of contract there must be an injury to the plaintiff regardless of whether the plaintiff suffered actual damages as a result of such injury. This distinction is important.

In *Kronos, Inc. v AVX Corp.*, 81 NY2d 90 (1993), the Court of Appeals determined when a claim for tortious interference of contract accrues, holding that the statute of limitations does not start to run until the plaintiff sustains an injury. In its analysis, the Court detailed the differences between tort and contract principles, stating

> "Nominal damages are always available in breach of contract actions, but they are allowed in tort only when needed to protect an 'important technical right.' For example, nominal damages have been recognized in tort to protect a landowner's right to be free of trespass, but that exception from the established rule that actual injury must be shown is warranted because a continuing trespass may ripen into a prescriptive right and deprive a property owner of title to his or her land. There is no similarly compelling reason for departing from the actual injury rule when the trespass alleged is not to real property but to a chattel or, as in the present case, to an intangible property right arising under contract. In such cases, actual loss must be demonstrated. …
>
> Fundamentally different functions are served by an action in tort on the one hand, and an action in contract on the other, and an understanding of that functional difference is critical to understanding why nominal damages are appropriate in one and not in the other. Contract liability is 'imposed by the law for the protection of a single, limited interest, that of having the promises of others performed … The law of torts … is concerned with the allocation of losses arising out of human activities.' In other words, a party's rights in contract arise from the parties' promises and exist independent of any breach. Nominal damages allow vindication of those rights. In tort, however, there is no enforceable right until there is loss. It is the incurring of damage that engenders a legally cognizable right. To recognize nominal damages element of tort claims would be to wrest the

cause of action from its traditional purposes--the compensation of losses--and to use it to vindicate nonexistent or amorphous inchoate rights when unlike in trespass to property, there is no compelling reason to do so." (*Id.* at 95-96 [internal citations omitted].)

The Court's determination that nominal damages are always available for claims of breach of contract implies that the breach of the contract in and of itself is the injury to which the plaintiff would be entitled to nominal damages at the least if it could not show actual damages. This aligns with the case law in the Appellate Division, Second Department. (*Ross v Sherman*, 95 AD3d 1100, 1100 [2d Dept 2012] [awarding plaintiff nominal damages after prevailing on liability for breach of contract where plaintiff failed to show actual damages]; *AB Oil Servs., Ltd. v TCE Ins. Servs., Inc.*, 188 AD3d 624, 628 [2d Dept 2020] [holding dismissal of breach of contract claim for lack of actual damages premature as actual damages not an essential element for such claim*]; Perry v McMahan*, 164 AD3d 1488, 1489-1490 [2d Dept 2018] [upholding lower court's award of nominal damages of $1 after a jury found plaintiff did not suffer damages from breach of confidentiality provision stating "defendant acknowledged that she breached the confidentiality provision of the parties' settlement agreement. In breach of contract actions, actual damages are not an essential element, and nominal damages are recoverable to vindicate contract rights"].)

The First Department has also sustained breach of contract claims in the absence of injury or actual damages on the ground that nominal damages are available for those claims. (*See NGM Mgt. Group, LLC v Bareburger Group*, LLC, 224 AD3d 600, 602 [1st Dept 2024] [declining to dismiss breach of contract claim, even though defendant attempted to demonstrate no damages were suffered, on the ground that nominal damages are available]; *Gordon v Schaeffer*, 176 AD3d 431, 431 [1st Dept

**652816/2020  BDO USA, LLP vs. FRANZ, MATTHEW**
Motion No.  014 015

**Page 10 of 28**

10 of 28

[* 10]

2019] [holding that "plaintiff's motion as to liability need not be denied because he failed to demonstrate damages as a result of the breach"]; *Schleifer v Yellen*, 158 AD3d 512, 513 [1st Dept 2018] [sustaining breach of contract claim even though respondents argued "that petitioners were not injured by the delay in providing the financial statement, [because] '[n]ominal damages are always available in breach of contract action'" (citation omitted)].)[8]

Following the Court of Appeals' reasoning in *Kronos*, the court finds that BDO suffered an injury as a result of defendants' breach of the exclusivity provision. However, waiver is an issue of fact. Thus, the court cannot determine whether defendants are liable for such breach at this time. Although BDO presents no evidence of actual damages in response to defendants' opposition, per the case law, it is not required to on its motion for partial summary judgment on liability. Accordingly, the court notes that it cannot reach any conclusion on BDO's motion as to whether BDO suffered actual damage because BDO did not make such a showing nor is it required to do so. The court will further address the issue of damages on defendants' motion for summary judgment *infra*.

---

[8] However, in some cases, the first Department has found that where a plaintiff cannot demonstrate that it suffered damages, the claim must be dismissed. (*See Tillage Commodities Fund L.P., v SS&C Technologies Inc.*, 151 AD3d 607, 608 [1st Dept 2017] [on a CPLR 3211 dismissing breach of contract where plaintiff "cannot demonstrate that it suffered any damages from defendant's failure to" turn over books and records, a right guaranteed by contract]; *Milan Music Inc. v Emmel Communications Booking Inc.*, 37 AD3d 206, 206 [1st Dept 2007] [finding that "plaintiffs' alleged damages amount to nothing more than conjecture as to what could have been earned," and thus "[w]ithout a clear demonstration of damages, there can be no claim for breach of contract."].)

[* 11]

*Faithless Servant*

Alternatively, BDO seeks summary judgment on its faithless servant claim including disgorgement of defendants' wages. In support of its faithless servant claim, BDO alleges that defendants "intentionally violated their employment agreements with BDO as well as BDO policies designed to protect the Firm and its business and reputation." (NYSCEF 2, Complaint ¶ 89.) Although several violations are alleged, specifically, (i) "disclosure and misuse of BDO Confidential Information and BDO Work Product," (ii) "secretion of Firm property to locations outside of BDO," and (iii) "continued pursuit of personal business in competition with the Firm" (*id.* ¶ 90), in this motion BDO only addresses item (iii) as grounds for liability. BDO seeks disgorgement of all compensation paid to Franz and Sowell.

"[T]he faithless servant doctrine states that an employee or agent who is faithless in the performance of his or her duties [to the principal] is not entitled to recover salary or commission." (*Two Rivers Entities, LLC v Sandoval*, 192 AD3d 528, 529 [1st Dept 2021] [citations omitted].)

> "One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary…. Nor does it make any difference that the services were beneficial to the principal, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent." (*Feiger v Iral Jewelry, Ltd.*, 41 NY2d 928, 928-29 [1977] [citations omitted].)

Two alternative standards have been applied by New York courts in determining whether an agent's "conduct warrants forfeiture under the faithless servant doctrine."

652816/2020  BDO USA, LLP vs. FRANZ, MATTHEW
Motion No.  014 015

Page 12 of 28

(*See Stanley v Skowron*, 989 F Supp 2d 356, 359 [SD NY 2013] [internal quotation marks and citation omitted].)

> "The first standard is met when the 'misconduct and unfaithfulness … substantially violates the contract of service' such that it 'permeate[s] [the employee's] service in its most material and substantial part.' The second standard requires only 'misconduct [] that rises to the level of breach of a duty of loyalty or good faith.' In other words, it is sufficient that the employee 'acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment." (*Id.* at 359-60, citing *Phansalkar v Andersen Weinroth & Co., L.P.*, 344 F3d 184, 201-203 [2d Cir 2003].)

Thus, a party asserting the faithless servant doctrine must show that the agent's misconduct "substantially violated the contract of service, such that it permeates the employee's service in its most material and substantial part," or that the agent's misconduct "rises to the level of a breach of a duty of loyalty or good faith." (*Id.* [internal quotation marks and citations omitted])

The law applying the faithless servant doctrine, under either approach, requires a breach of the agent's duty of loyalty. (*See id.*; *see also Dawes v J. Muller Company*, 176 AD3d 473, 474 [1st Dept 2019].) To breach the duty of loyalty, an employee must have "acted directly against the employer's interests—as in embezzlement, improperly competing with the current employer, or usurping business opportunities." (*Veritas Capital Mgt., L.L.C. v Campbell*, 82 AD3d 529, 530 [1st Dept 2011] [citation omitted], *lv dismissed* 17 NY3d 778 [2011]; *see e.g. Westcom Corp. v Dedicated Private Connections, LLC*, 9 AD3d 331, 332 [1st Dept 2004] ["Feldman's disgorgement of compensation was appropriate in view of her incorporation and financing of, and acquisition of equipment for, a business to compete with that of plaintiff while still in plaintiff's employ" (citations omitted)].) "[I]solated incidents" of disloyalty are insufficient;

652816/2020  BDO USA, LLP vs. FRANZ, MATTHEW
Motion No.  014 015

Page 13 of 28

13 of 28

rather, "a persistent pattern of disloyalty" is required to for an employer to recover compensation paid to an employee. (*Bon Temps Agency v Greenfield*, 212 AD2d 427, 428 [1st Dept 1995] [internal quotation marks and citation omitted].)

1. Duty of Loyalty

It is undisputed that BDO employed Sowell pursuant to the September 8, 2015 manager agreement until June 30, 2020, and employed Franz pursuant to the November 6, 2015 manager agreement until June 26, 2020. (NYSCEF 383, JS ¶¶ 3-4, 12, 14; NYSCEF 3, Franz Manager Agreement; NYSCEF 4, Sowell Manager Agreement.) Their duty of loyalty to BDO is thus implied. (*See Alexander & Alexander v Fritzen*, 147 AD2d 241, 246 [1st Dept 1989] ["The obligation of loyalty implied by the relationship between an employee and his (her) employer rests upon the rule that a person who undertakes to act for another shall not in the same matter act for himself (herself)." (citations omitted)].) Additionally, per the manager agreements, "[i]t is understood, acknowledged and agreed that Employee has a fiduciary relationship with the Firm." (NYSCEF 3, Franz Manager Agreement ¶ 6; NYSCEF 4, Sowell Manager Agreement ¶ 6.)

2. Breach

As discussed, Sowell provided services through DS Technical while employed by BDO.[9] (NYSCEF 288, tr at 152:8-10 [Sowell depo]; NYSCEF 486, tr at 7:9-12 [oral argument on mot. seq. nos. 014, 015].) BDO proffers Sowell's deposition testimony where he states that through DS Technical, he provided data analytics and web

_____

[9] In support of its summary judgment motion on this claim, BDO does not cite evidence that Sowell performed services for BRG; instead, it only relies on the evidence that Sowell pursued outside activities through DS Technical. However, as stated, whether the BRG work was performed through DS Technical is unclear to the court.

**652816/2020 BDO USA, LLP vs. FRANZ, MATTHEW** **Page 14 of 28**
**Motion No. 014 015**

consulting or web development services. (NYSCEF 289, tr at 152:12-13 [Sowell depo].) Yet, an issue of fact remains whether Sowell was improperly competing with BDO. Indeed, BDO's assertion that DS Technical's services and BDO's services were similar and in competition is not supported by citation to any evidence. Finally, for the reasons discussed *supra*, the issue of fact remains whether BDO has waived its right to seek disgorgement based on Sowell's outside employment. (*See Hadden v Consol. Edison Co. of New York, Inc.*, 45 NY2d 466, 469 [1978] ["Generally and excepting instances where there would be transgressions of public policy, all rights and privileges to which one is legally entitled, *ex contractu* or *ex debito justitiae*, may be waived" (citations omitted)]; *G.K. Alan Assoc., Inc. v Lazzari*, 44 AD3d 95, 100 [2d Dept 2007] ["A principal who condones misconduct on the part of his or her agent may not rely on that misconduct to deprive the agent of compensation" (citations omitted)], *affd* 10 NY3d 941 [2008]; *Roden v Dan's Papers, Inc.*, 13 Misc 3d 140[A], 2006 NY Slip Op 52247[U], *2 [App Term 2006] [applying waiver doctrine in context of breach of duty of loyalty counterclaim].)

BDO argues that Franz breached his duty of loyalty by performing services for BRG.[10] As discussed *supra*, however, an issue of fact exists whether Franz's work for

---

[10] BDO does not move for summary judgment on the faithless servant claims as against Franz based on his ICA-related work. As stated, BDO admits that there is an issue of fact as to whether Franz received BDO's permission for ICA-related work. (*See supra* at 8 n 9.)

[* 15]

BRG overlapped with his BDO employment.  Thus, BDO's summary judgment motion on the faithless servant claim as against Franz is denied.

In opposition, defendants argue that this claim must be dismissed as time-barred as against Franz because Franz never received income from BRG after 2016, that is, more than three years before this action was filed in June 2020.  Defendants rely on Franz's interrogatory response which states that from December 2014 until December 2016, BRG was one of his sources of income, but does not list BRG among Franz's sources of income during his remaining tenure at BDO.  (NYSCEF 297, Franz's second supplemental responses at 3/5.)  Here, in light of Franz's inconsistent testimony about the timing of his work for BRG, an issue of fact remains as to whether this claim is timely.

Motion Seq. 015 – Defendants' Motion for Summary Judgment

*Breach of Contract*

BDO alleges four categories of breaches by defendants of the manager agreements and BDO's Workplace Guide and Ethics Code: (i) breaches relating to confidential information and work product by "repeatedly removing, copying, using, and disclosing to third parties BDO Confidential Information and BDO Work Product," "loading onto and developing BDO Confidential Information and BDO Work Product on non-Firm laptops," and "loading onto and developing BDO Confidential Information and BDO Work Product on non-Firm servers" (NYSCEF 2, Complaint ¶ 74); (ii) breach by "using non-Firm e-mail accounts to conduct BDO business" (*id.*); (iii) breach by "failing to turn over to BDO immediately upon origination or acquisition intellectual property developed for BDO" (*id.*); and (iv) breach of the exclusivity clauses by "failing to devote

652816/2020   BDO USA, LLP vs. FRANZ, MATTHEW                              Page 16 of 28
   Motion No.  014 015

16 of 28

all of their working time and energy and to give their best attention exclusively to the business of the Firm, including by (a) maintaining separate personal consulting businesses that competed with BDO and (b) devoting time and energy and attention to those separate businesses while employed at BDO." (*Id.* ¶ 75.)

### 1. Damages

Defendants once again argue that BDO did not suffer damages for any of the alleged breaches of the manager agreements. As discussed above, the fact that BDO did not establish actual damages does not warrant dismissal of its breach of contract claim. However, BDO's failure to raise an issue of fact that it did suffer actual damages, precludes it from seeking actual damages at trial. This failure also renders the liquidated damages provision unenforceable on plaintiff's contract claim.

"Liquidated damages constitute the compensation which, the parties have agreed, should be paid in order to satisfy any loss or injury flowing from a breach of their contract." (*Truck Rent-A-Ctr., Inc. v Puritan Farms 2nd, Inc.*, 41 NY2d 420, 423-24 [1977] [citation omitted].)

> "Liquidated damages that constitute a penalty, however, violate public policy, and are unenforceable. A provision which requires damages 'grossly disproportionate to the amount of actual damages provides for [a] penalty and is unenforceable.'" Whether a provision in an agreement is 'an enforceable liquidation of damages or an unenforceable penalty is a question of law, giving due consideration to the nature of the contract and the circumstances.'" (*172 Van Duzer Realty Corp. v Globe Alumni Student Assistance Assn., Inc.*, 24 NY3d 528, 536 [2014] [citations omitted].)

"Although the party challenging the liquidated damages provision has the burden to prove that the liquidated damages are, in fact, an unenforceable penalty, the party seeking to enforce the provision must necessarily have been damaged in order for the

652816/2020  BDO USA, LLP vs. FRANZ, MATTHEW
Motion No.  014 015

Page 17 of 28

provision to apply.'" (*Rubin v Napoli Bern Ripka Shkolnik, LLP*, 179 AD3d 495, 496 [1st Dept 2020] [citations omitted].) "[I]f no damage is sustained, the provision of a contract for liquidated damages will be regarded as a penalty." (*Dunn v Morgenthau*, 73 AD 147, 148 [1st Dept 1902], *affd* 175 NY 518 [1903]; *see also Fahn v Dann*, 207 Misc 834, 835 [Sup Ct, Onondaga County 1955] ["Plaintiffs should not be permitted to recover a substantial sum [pursuant to the liquidated damages clause] if nominal damages only resulted from the breach of contract"].) BDO fails to identify any damages it suffered as the result of defendants' breaches of contract.

Despite BDO's argument to the contrary, it logically follows that awarding liquidated damages where no actual damages were incurred would be grossly disproportionate since the actual damage amount is zero or nominal. Further, the court has not improperly shifted the burden of proof on this motion. Defendants raised the general issue that BDO has not sustained damages for any breach, the burden therefore shifts to BDO to raise an issue of fact, providing some proof sufficient to demonstrate damages flowing from the breach. BDO failed to do so. Without any proof of actual damage, it follows that the liquidated damages provision cannot be enforced.[11] (*Rubin*, 179 AD3d at 496.)

In any event, as previously discussed "[n]ominal damages are always available in breach of contract actions." (*Kronos, Inc.*, 81 NY2d at 95 [citation omitted].) Thus, if the trier of fact finds that there was no waiver of the writing and exclusivity provisions of the

---

[11] The court notes that "where a liquidated damages provision is an unenforceable penalty, 'the rest of the agreement stands, and the injured party is remitted to the conventional damage remedy for breach of that agreement, just as if the provision had not been included.'" (*JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 380 [2005], quoting 3 Farnsworth, Contracts § 12.18, at 304 [3d ed].)

**652816/2020   BDO USA, LLP vs. FRANZ, MATTHEW**   **Page 18 of 28**
Motion No.  014 015

18 of 28

manager agreements, BDO's recovery on this claim will be limited to nominal damages. The court rejects defendants' argument that BDO has not suffered an injury, as addressed *supra*, the injury is the breach of the manager agreements in and of itself. (*Id.*)

    2.  Breach

    i.      Sowell

As to the breach of the exclusivity provision of the manager agreements, defendants' motion as to Sowell is denied as issues of fact exist as detailed above.

Defendants assert that they never breached the manager agreements' confidentiality provisions. In the complaint, BDO alleges that defendants "developed and stored BDO Confidential Information and BDO Work Product—including relating to BioTRAK … and USA Spend … on personal laptops not connected to BDO computer systems, on servers housed outside of BDO's computer systems, and in email accounts outside of BDO." (NYSCEF 2, Complaint ¶¶ 3, 43.) BDO also alleges that defendants "directed the Data Analytics Team to develop the website displaying the BioTRAK dashboard on Amazon Web Services, Github, and Linode" and "communicated with other members of the Data Analytics Team outside of BDO's controlled email environment, including through gmail accounts." (*Id.* ¶¶ 46-47.) BDO further alleges that Sowell personally purchased the website that hosts BioTRAK instead of doing so in BDO's name. (*Id.* ¶ 49.)

Defendants submit evidence showing that BDO waived Sowell's breach based on the development and maintenance of a website for the BioTrack project outside the BDO environment. Sowell testified that BDO's managing directors Tom Fuchs and Patti

**652816/2020 BDO USA, LLP vs. FRANZ, MATTHEW**
Motion No. 014 015

**Page 19 of 28**

19 of 28

Seymour "approved [Sowell] to create the website in [his] personal environment." (NYSCEF 312, tr at 306:12-14 [Sowell depo]; *see also* NYSCEF 251, Franz aff ¶ 16 ["senior BDO marketing personnel directed us to proceed with building the marketing website, even if it was not maintained in a BDO environment"].)  By approving Sowell's development and maintenance of the BioTrack website, BDO waived its right to sue for such conduct.  (*Fundamental Portfolio Advisors, Inc.*, 7 NY3d 96 at 104 ["Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned"].) BDO proffers no evidence to raise an issue of fact.[12]  Defendants also submit evidence demonstrating that Sowell developed code and analyzed USA Spend/Indeed data within the BDO environment.  (NYSCEF 353, Franz interview at 64/158:412-417.)  Again, BDO proffers no evidence to dispute this.  Accordingly, the breach of contract claim is dismissed as against Sowell to the extent based on the allegations that Sowell (i) developed and maintained the BioTrack website outside BDO environment and (ii) developed code and analyzed USA Spend/Indeed data outside the BDO environment.

Defendants' remaining arguments for why certain conduct by Sowell was not in breach are unsuccessful.  First, it is not apparent to the court, and defendants fail to explain, how the evidence that defendants accomplished nothing of use in relation to the BioTrack dashboard (NYSCEF 348, tr at 44:15-17 [Seymour depo]) shows a lack of any alleged breach.  Second, the evidence that Sowell ultimately transferred to BDO certain BDO files that he admittedly stored outside of the BDO environment does not

_____

[12] Defendants argue that the BioTrack website code and a copy of 2018 BioTrack reports, which was to be used on the website, constitute the only BioTrack information that Sowell stored outside the BDO environment.  Defendants, however, cite no evidence to support this proposition.

652816/2020   BDO USA, LLP vs. FRANZ, MATTHEW
Motion No.  014 015

Page 20 of 28

demonstrate that there are no issues of fact as to the multiple alleged breaches relating to Sowell's handling of BDO confidential information, BDO work product, and the intellectual property developed for BDO. (*See* NYSCEF 2, Complaint ¶ 74.) Third, whether Sowell's collection of information from the USA Spend and Indeed websites on his personal device due to lack of necessary software within the BDO environment was approved by his superiors or authorized by his manager agreement is unclear. Whether the collection of such information was the only USA Spend/Indeed-related task completed outside the BDO environment is likewise unclear as no proffered evidence supports this contention.

ii.     Franz

As to Franz, defendants argue that he never stored or developed BDO confidential information or work product outside the BDO environment. However, Franz testified during his deposition that all his BDO work was completed on the BDO systems. (*See* NYSCEF 310 tr at 37:6-13, 40:13-41:3 [Franz depo].) In turn, BDO proffers no evidence to raise an issue of fact. Thus, the breach of contract claim is dismissed as against Franz to the extent based on the allegations that Franz conducted BDO work outside the BDO environment. (*See* NYSCEF 2, Complaint ¶¶ 43-46.)

Defendants next argue that Franz never breached the exclusivity provision. As to his work with BRG, the motion is denied as issues of fact exist as discussed above. In addition, there is also an issue of fact as to whether the outside employment approval form submitted to BDO by Franz in 2015 (NYSCEF 322, Oct. 26, 2915 emails at 5-6/6), was ultimately approved. In an email, William Eisig, BDO's regional managing partner, stated that he "approve[s] Matt Franz," but an issue of fact remains as to whether that

**652816/2020  BDO USA, LLP vs. FRANZ, MATTHEW**                      **Page 21 of 28**
   Motion No.  014 015

[* 21]

included an approval of the outside employment form regarding BRG as Eisig states in that same email that his "understanding is that the $200K on the initial application is earnings from Berkeley Research which will be discontinued if he works with us." (NYSCEF 325, Oct. 30, 2015 emails at 1.)

The evidence demonstrates, however, that Franz submitted a new outside employment approval form to BDO for his ICA work dated April 27, 2018, which was approved on December 6, 2018. (NYSCEF 309, Form; NYSCEF 308 Lita Beth Wright[13] aff ¶ 30; NYSCEF 337, Outside Employment Approval Chart; NYSCEF 317, tr at 144:10-145:2 [Ellen Stevens depo[14]].) BDO fails to raise an issue fact as to the 2018 approval or even address the Approval Chart. Accordingly, Franz' ICA work completed after December 6, 2018 was not a breach of the exclusivity clause.[15]

*Faithless Servant*

As discussed, BDO' faithless servant claim arises from defendants' alleged (i) "disclosure and misuse of BDO Confidential Information and BDO Work Product," (ii) "secretion of Firm property to locations outside of BDO," (iii) and "continued pursuit of personal business in competition with the Firm." (NYSCEF 2, Complaint ¶ 90.)

---

[13] Wright is defendants' counsel. (NYSCEF 308, Wright aff ¶ 1.)

[14] Stevens is BDO's director at the office of ethics and compliance. (NYSCEF 317, tr at 14:20-22 [Stevens depo].)

[15] The court notes that BDO Ethics Code lists several requirements that must be met for a BDO employee to conduct outside employment or activities. (*See* NYSCEF 455, BDO Ethics Code at 26.) BDO, however, does not allege violation of the relevant provision of the BDO Ethics Code as in the complaint BDO only addresses the Ethics Code in connection with confidential information. Accordingly, the court analyzes only whether the alleged breach of the exclusivity provision took place, and whether BDO waived any of its rights under the exclusivity provision.

652816/2020  BDO USA, LLP vs. FRANZ, MATTHEW
Motion No. 014 015

Page 22 of 28

As discussed *supra*, there are issues of fact whether BDO waived its faithless servant claim based on Sowell's outside employment and whether Franz's work for BRG overlapped with his BDO employment.  As to Franz' ICA-related work, for the reasons discussed above, the faithless servant claim is dismissed against Franz to the extent premised on his ICA-related work completed after December 6, 2018 and on the allegations that he conducted BDO work outside the BDO environment.

As to Sowell's alleged disclosure and misuse of confidential information, this claim is dismissed to the extent it is premised on allegations that Sowell (i) developed and maintained the BioTrack website outside BDO environment and (ii) developed code and analyzed USA Spend/Indeed data outside the BDO environment, for the reasons stated above.

Relying on the contract's damage requirement of "incident, loss or damage," defendants argue that the faithless servant claim fails because plaintiff has not established actual damages.  (NYSCEF 3, Franz Manager Agreement ¶ 8; NYSCEF 4, Sowell Manager Agreement ¶ 8.)  However, actual damages are not required for faithless servant.  (See *Feiger v Iral Jewelry, Ltd.*, 41 NY2d 928, 928-29 [1977] [citations omitted].)

If faithless servant is proven at trial, defendants next argue that disgorgement is unavailable because any damages are limited to the liquidated damages set forth in the manager agreements which provide:

> "If employee…otherwise causes the Firm financial loss or damage through unfair competition or business practices or violation of Employee's fiduciary duty, including the unauthorized use of Confidential information, then the Employee shall pay the Firm $20,000 for any such incident, loss or damage, or a lesser

652816/2020  BDO USA, LLP vs. FRANZ, MATTHEW
Motion No.  014 015

Page 23 of 28

amount, if Employee reasonably proves to the Firm that such amount reflects the applicable loss or damage."

The court rejects defendants' argument that the liquidated damages provision bars disgorgement entirely. Rather, the parties have agreed in advance in the contract to limit such damages "for violation of Employee's fiduciary duty" to the liquidated damages. Since the First Department "has applied the same standards for determining a breach of duty of loyalty claim to a breach of fiduciary duty claim against an employee," the contract provision would seem to apply to faithless servant. (*Bluebanana Group v Sargent*, 176 AD3d 408, 409 [1st Dept 2019].) As discussed above, while liquidated damages are not available for a breach of contract here, the analysis is different for breach of fiduciary duty such as plaintiff's faithless servant claim. However, capping disgorgement by the liquidated damages provision results in a conflict between the policy that allows parties freedom to contract, including limiting damages, and the policy underlying disgorgement for faithless servant. "[T]he function of [a faithless servant] action, unlike an ordinary tort or contract case, is not merely to compensate the plaintiff for wrongs committed by the defendant but, … 'to Prevent them, by removing from agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others, or to which their agency or trust relates.'" (*Diamond v Oreamuno*, 24 NY2d 494, 498 [1969].) Since neither party addressed this conflict, defendants' motion is denied.

*Duplication*

Defendants argue that the claims for (ii) breach of fiduciary duty, (iii) breach of the implied covenant of good faith and fair dealing, (iv) faithless servant, and (v) unjust enrichment shall be dismissed as duplicative of the breach of contract claim because

652816/2020 BDO USA, LLP vs. FRANZ, MATTHEW
Motion No. 014 015

Page 24 of 28

"these allegations and the remedies available to BDO if proven, are squarely addressed in the Manager Agreement." (NYSCEF 381, MOL at 26/29.)

1. Breach of Fiduciary Duty

BDO alleges that defendants breached their fiduciary duty by "acting against BDO's interests." (NYSCEF 2, Complaint ¶ 79.) BDO fails to offer evidence or "allege conduct by defendants in breach of a duty other than, and independent of, that contractually established between the parties." (*Kaminsky v FSP Inc.*, 5 AD3d 251, 252 [1st Dept 2004].) Thus, this claim is duplicative.

2. Breach of the Implied Covenant of Good Faith and Fair Dealing

The breach of the implied covenant of good faith and fair dealing claim merely alleges violations of the manager agreement and is duplicative of the breach of contract claim. (*See AEA Middle Mkt. Debt Funding LLC v Marblegate Asset Mgt., LLC*, 214 AD3d 111, 132-33 [1st Dept 2023] ["Where a cause of action for breach of the implied covenant of good faith and fair dealing is based on the same operative facts and seeks the same damages as a cause of action for breach of contract, the good faith claim is duplicative and should be dismissed" (citation omitted)].)

3. Faithless Servant

This claim is properly maintained alongside the contract claim. (*See At Last Sportswear, Inc. v Byron*, 226 AD3d 551, 552 [1st Dept 2024] [holding that where "the breach of contract claim is based on the allegation that the employee violated a confidentiality provision by taking and distributing proprietary information, and the tort-based claims are based on allegations that the employee engaged in conduct against the employer's interest by taking and distributing confidential information while

652816/2020  BDO USA, LLP vs. FRANZ, MATTHEW
Motion No.  014 015

Page 25 of 28

25 of 28

employed, to assist in the creation of a competing company … the employer may assert both tort-based claims rooted in the violation of the duty of loyalty and breach of contract"].) Further, BDO seeks the "forfeiting of compensation and disgorging of ill-gotten profits;" such damages differ from the damages on the breach of contract claim. (*Id.*; NYSCEF 2, Complaint ¶ 91 ["Franz and Sowell are not entitled to retain any of the compensation and bonuses they received while employed at BDO"].)

### 4. Unjust Enrichment

The unjust enrichment claim is dismissed as duplicative. (*See Clark-Fitzpatrick, Inc. v Long Is. R. Co.*, 70 NY2d 382, 388 [1987] ["The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter" (citations omitted)].)

The court has considered the parties remaining arguments relating to motion sequence numbers 014 and 015 and finds that they lack merit, are inappropriately raised for the first time on reply, or do not affect the outcome.

Accordingly, it is

ORDERED that motion sequence 014 is denied; and it is further

ORDERED that motion sequence 015 is granted, in part, as follows: (i) the breach of contract cause of action against Donald Sowell is dismissed to the extent premised on the allegations that he developed and maintained the BioTrack website outside the BDO environment and developed code and analyzed USA Spent/Indeed outside the BDO environment; the breach of contract cause of action against Matthew Franz is dismissed to the extent premised on the allegations that he conducted BDO

**652816/2020  BDO USA, LLP vs. FRANZ, MATTHEW**
Motion No.  014 015

**Page 26 of 28**

26 of 28

[* 26]

work outside the BDO environment, and breached the exclusivity provision by conducting ICA-related work after December 6, 2018; (ii) BDO is limited to nominal damages should it be successful on its breach of contract claim; (iii) the breach of the implied covenant of good faith and fair dealing causes of action is dismissed as against both defendants; (iv) the faithless servant cause of action is dismissed to the extent premised on Franz' ICA-related work completed after December 6, 2018 and on the allegations that he conducted BDO work outside the BDO environment and as to Sowell's alleged disclosure and misuse of confidential information, this claim is dismissed to the extent it is premised on allegations that Sowell developed and maintained the BioTrack website outside BDO environment and developed code and analyzed USA Spend/Indeed data outside the BDO environment; (v) the unjust enrichment is dismissed as against both defendants; and (vi) the breach of fiduciary duty claim is dismissed against both defendants; and it is further

ORDERED that the parties shall appear for trial scheduling conference on February 7, 2025 at 2:30 p.m. The parties are directed to review Part 48 Trial Procedures prior to the trial scheduling conference.

20250107150322AMASLEY01929FB5DD364C7EB15AC118B34CBD5D

**1/7/2025**
**DATE**

**ANDREA MASLEY, J.S.C.**

CHECK ONE: ☐ CASE DISPOSED ☒ NON-FINAL DISPOSITION
☐ GRANTED ☐ DENIED ☒ GRANTED IN PART ☐ OTHER
APPLICATION: ☐ SETTLE ORDER ☐ SUBMIT ORDER
CHECK IF APPROPRIATE: ☐ INCLUDES TRANSFER/REASSIGN ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE

**652816/2020 BDO USA, LLP vs. FRANZ, MATTHEW**
**Motion No. 014 015**

**Page 27 of 28**

27 of 28

[* 27]